We're going to move now to appeal 24-1532. This is Farhan v. 2715 NMA LLC et al. And we're going to begin with argument. Counsel, was it Weichel or? Weichel. Weichel, thank you very much. We'll begin with you, thank you. And good morning, your honors. May it please the court. My name is Cheryl Weichel. I represent Manal Farhan. The court below made three significant errors in dismissing our Fair Housing Act claims. First, the court below took essentially the defendant's version of facts as true. Second, the court below applied a series of precedents based on summary judgment without ever letting us proceed to discovery. And drawing a bunch of factual inferences from the discovery that never happened based on taking defendant's word for what happened. And third, the court ignored the binding precedent of this court in Block v. Frischholz. And I'd like to take those in order, if I may. First of all, we need to address what it is that brought us here. And that is a policy that the defendants created that requires tenants to remain neutral on the issue of the Israeli-Palestinian conflict. And as such, prohibits tenants from putting in their windows Israeli or Palestinian flags. The issue here applies to my client who is Palestinian. My client's family is from Almaha in the West Bank. Her family still lives in and around Ramallah in the villages near there. And she flies the flag because of her identity. It is who she is. And what the defendants did, and what the court below did, and we believe that it is error, is it turned my client's identity into a political issue. The problem is, once you have any kind of policy, facially neutral or otherwise, that requires someone to be neutral on a political issue, you necessarily undermine their identity. Imagine, for example, a policy that says that a gay couple must remain neutral on the issue of gay marriage. Or a policy that says that a queer couple cannot fly a queer pride flag because the landlord requires that the tenants remain neutral. The issue is that once you go there, you can't unring that bell. When symbols represent people. And that is what this court recognized in Block v. Thresholds. Did the Fishman Company know, though, the nationality or national origin of Farhan? They did, though. And this is important because the district court sort of glossed over this a little bit. But before the notice of termination was given to my client, she had that conversation. And we actually allege this in the complaint. In paragraphs 19 through 31, we actually, in the complaint, go through the conversation that my client had with Vida Sleeman, I apologize, an employee of the defendants, in which Ms. Sleeman stated that it was the policy of the defendants that no one was allowed to put up a Palestinian flag because of their neutrality policy. My client explained that she is Palestinian. And in response, Ms. Sleeman stated that if she continued to have the flag up, she would be evicted. So the sequence is a call from Fishman to your client indicating the flag should come down. And I think my question focuses then on what knowledge Fishman Company would have had about your client's national origin or nationality before the call. But that's a great question, Your Honor. And here's the problem. That's a question of fact or summary judgment. And we never got there because the problem is the court below took defendant's version of events as we had no idea. But the reason that these cases, that most of the cases cited by both sides for the questions of law here are summary judgment cases is because there's a developed factual record. Intent is a question of fact. Go ahead, Kamala. Go ahead, Kamala. And I actually hear you to be saying there are two different knowledge points that could be relevant if you were to engage in discovery. One is the question that Judge Brennan has just asked. What did they know about Ms. Farhan's national origin at the time they made the call saying the flag should come down? Then I hear you to be saying there's a second knowledge point. During the call, the defendants are in fact informed I am Palestinian. And at that point, they apply the policy to her regardless of that knowledge. Correct. Is that what you are arguing before? Correct. And that is our point that intent and knowledge are fact questions. We never got any depositions. The court below never even let us get initial disclosures. Instead, the court said we didn't plead evidence, a word that the court below used and the defendants attempted to explain away. But sometimes the court means what it says. And the court was asking us to plead evidence without discovery and then applying cases that have summary judgment standards. We were entitled at the very least to discovery on the issue of intent. And yes, it is entirely possible as defendants are saying, well, we would get summary judgment anyway, just like in Hamad. The problem is we're going to win isn't a basis to skip a bunch of steps during litigation. But at this step, what's the plausible inference? What are you asking the court to hold in regards to the discriminatory intent? We are asking the court to hold that they knew that she was Palestinian and flying the flag as a result of her heritage from the beginning and that they applied this policy to her notwithstanding her Palestinian identity. At the very least, they gave her a notice of termination knowing that she was Palestinian, knowing that she was putting the flag in her window because of her Palestinian identity. And as a result, that was the sole basis for them terminating her lease. So what we are asking the court to infer, because on a motion to dismiss, all facts alleged in the complaint are true and all inferences are in favor of the non-moving party and none of that happened below. And so if the defendant is going to be saying that isn't what happened and if the court below is going to say, well, I'm taking the defendant's version of what they knew and when, at the very least, we're entitled to discovery on that issue and develop a factual record. And that is what we are saying should have happened below, especially given the good questions that your honors are asking about what the defendants knew and when they knew it, all of which was simply taken based on the defendant's word in the briefing. And what are you asking us to hold in regards to this policy? That if there's a policy that involves something that does go to someone's identity, such as a flag, if there's a policy on neutrality that violates the FHA, or does there need to be more? Does there need to be a plausible inference regarding intent? I'm happy to answer your honor's question and then I will reserve the balance of my time for rebuttal. We don't believe that your honors even have to hold anything as to the policy because the application of the policy here goes to intent that we never got a factual record on. It is entirely possible, just like in Block, that a facially neutral policy could be just that facially neutral. It's also possible that this policy was invented to target my client because they knew she was Palestinian. And as we set forth in the case law, in the Shea case, in the other cases that we cited, at this point in the litigation, we're entitled to those inferences. I'd like to reserve the remainder of your time. Thank you very much. Very good, thank you. Is it Sirleck? Close enough. Very good, okay, thank you. Counsel. May it please the court. Jonathan Sirleck on behalf of the defendant's appellees. The district court correctly dismissed the complaint with prejudice. Under the plausibility standards articulated in Twombly and Iqbal, plaintiff has not alleged any facts showing that she has a plausible claim. She has not alleged facts showing that defendants were taken intentionally because of her national origin. Moreover, plaintiff has alleged facts that have in fact pled herself out of court. In fact, she alleges that there was a neutrality policy and therefore enforcement of that neutrality policy what is inherently discriminatory. And I'll pick up where your honors finished her questioning of Ms. Weichel. What at most she showed that there was this, the policy against, prohibited someone of Palestinian origin from flying a flag, a Palestinian flag, in spite of her national origin, not because of her national origin. Below, the plaintiffs conceded that this same policy would apply to anybody flying a Palestinian flag or a Jewish or Israeli person sympathizing with Palestinians flying a Palestinian flag. The issue is with what the flag, the issue that they take issue with. The issue that they have is what the discrimination, not discrimination, but what the flag represents. And there's nothing wrong with an apartment owner. Let me skip to a part that would help me. The company says, you know, flags outside the building are against the lease. Certainly looks like it from section 2.2L or whatever the section is. Then in the conversation, Ms. Farhan says, OK, and I'm paraphrasing, I'll put it inside my window, which would not seem to be a violation of the lease. She's told you can't do that. You can't put a flag inside your window because that wouldn't be neutral. What is your response to Ms. Farhan's argument that what they're alleging is that other tenants are permitted to have religious or other symbols? Well, inside, and this is in the complaint, inside their window. But she was told in that conversation, she can't have a flag inside her window. That's not in her allegations. There's no allegation that there was a phone call that said or conversation that she could not have it in her window. But putting that aside, as Judge Gettleman correctly noted, there would have to be pled facts about the national origins of those other individuals. We'd have to know if people were treated differently based on their national origin of the people putting up those symbols. And there are no facts at all and alleged regarding that. Plus, if you look at the Block case, which plaintiff relies upon, it actually supported that of us in that case. In that case, for three years, they didn't enforce a policy of taking down, having people taking down mezuzah or crucifixes or other symbols. And then after three years, when they were doing a renovation project, they started having people taking those symbols down, including mezuzah and crucifix. And the court, this court in the Block case said, if that were the only allegation, that would not violate the FHA that suddenly they now are enforcing a clause in the lease that they previously didn't clause because it's a neutral clause and it applies equally to everybody. But in the Block case, there was far more. There was facts that were elicited about anti-Semitic animus by the board president against Ms. Block. Those facts are not alleged here. There's nothing to indicate. Paragraph 31 of the complaint. Moreover, Slyndian had informed plaintiff that she would not be permitted to have the flag completely inside her window either because that was not neutral. Okay. I'm trying to understand what you're telling me about this paragraph is not in the complaint. Okay. I apologize, Your Honor. I've forgotten the paragraph 31 because it's after the conversation. But even assuming that that conversation is true, adopting... Which we must do at this point. True. That would not be discriminatory based on the FHA because you're applying that to everybody regardless of their national origin. There's no facts alleged that someone put a Palestinian flag in the window that was allowed to do it and that person wasn't of Palestinian origin. There's no allegations that people put Israeli flags in their windows. Paragraph 32 then says, her allegations, this is pretextual. Then we go down to 34 that there are other tenants who display Christmas or holiday decorations, Hanukkah menorahs, et cetera. So there are some allegations here. I take it defendant disagrees, but why not have discovery? Because those allegations don't support the proposition that neutrality policy would prohibit the displaying of Christmas or holiday decorations or seasonal art such as snowflakes or Hanukkah menorahs. There's no allegation that anybody displaying that would be favored based on their nationality. It's an apples and oranges thing. Are you assuming the neutrality policy is a thing and it's legitimate whereas she is alleging that it's pretextual in being used? To understand from your perspective, do we need to adopt your view of the neutrality policy? No. In fact, I'm assuming there's a policy. Obviously, this is a 12B6 motion. So we're assuming well-plaid facts is true. And so let's assume that there was a neutrality policy, that they made this neutrality policy that tenants should be neutral in the Israeli-Palestinian conflict that enforcing it on everybody. There's no evidence that they just targeted somebody who is a Palestinian-American. If a person who is Anglo-American, Scottish-American, Irish-American put the Palestinian flag in their window, there could be no argument that asking that person to take it out of their window either inside or from the out would not violate the FHA because you're not acting about the person's national origin. As Judge Gettleman noted, the plaintiff's issue is not the tenant's national origin, it's the tenant's conduct. As they've pledged, they're concerned about the Palestinian flag or the Israeli flag. They're not concerned about the national origin of the person who hangs the flag. And so at the end of the day, what plaintiff is asking for is what the Supreme Court and this court said you can't have, and that is a national origin accommodation. What plaintiff is looking for is a rule that says where a person is of certain national origin, you have to ignore a neutral policy or a neutral lease provision and allow that person to fly the flag of their national origin. And respectfully, Your Honor, that's not allowed under our case law. And in fact, if you just take that hypothetical out to the logical extreme, that would prohibit a landlord from taking control of the outside of his building. He would be required to have everybody be allowed to fly their flag of their national origin, and that's not allowed. The case law does not provide for national origin accommodation under the FHA. And that, at the end of the day, is what plaintiff is asking for. Again, if you take these hypotheticals out, things that people might find offensive, and not allow a landlord to address that. I mean, remember, there was a complaint. There was an allegation that there was a complaint made by another tenant. And it's not case law, but in doing the research, there is some guidance from I think like a California Department of Housing that says if you fly a Confederate flag, if a landlord allows a Confederate flag, or a Nazi flag, or some other flag, or a tenant to fly a banner that indicates some type of animus toward a minority, the landlord can be held liable under the FHA for allowing that to happen. So here, assuming that taking the allegations is true, a neutrality policy that applies equally to everyone, regardless of national origin, is allowed under the FHA. And for those reasons, unless the court has further questions, I ask the court affirm the district court. Thank you, counsel. We'll go back to rebuttal argument. Thank you, your honors. I just want to address very quickly a couple of the points that counsel made. We're not asking for this court to enunciate any rules about neutrality policies. We're asking this court to reverse the lower court and send us back for discovery because intent is a question of fact. And if I think what defendant's argument just disclosed very clearly is how many questions of fact there are here about when the defendant knew that plaintiff was Palestinian, why they put this neutrality policy in place for this particular conflict, which has to do with people of these particular national origins. Now, I do want to emphasize a couple of things. We're not in California. There's no liability. There's nothing in the record that indicates any liability will attach to the defendant for having a Palestinian flag in a tenant's window. But I will say this, that if they are barring Palestinians from putting Palestinian flags in their windows because those tenants are Palestinian, that does violate the Fair Housing Act. That is the very sort of thing that Bloch versus Frischholtz said you can't do to put it a different way. There is nothing, a big hand of God won't come down and stop a Christian or a Muslim from putting a mezuzah in their doorway. And so if the condo association in Bloch made the argument, well, we're not being anti-Semitic. We're saying you can't put a mezuzah in your doorway and it applies to everybody, like the old Anatoly France axiom. But what Bloch had and we don't is the benefit of a developed factual record after discovery. Those facts, the defendant's counsel was talking about that were available in Bloch were on summary judgment after discovery, depositions and discovery answers, all going to the intent of that facially neutral policy. We have none of that here because Judge Gettleman decided to skip to the end. He believed that in the end because of Hamad, the defendants would win anyway. But that is not how our system works. So what we're asking for is the discovery that we are entitled to, that we believe we're entitled to under the rules. And I thank you very much for your consideration. Thank you to both counsel. The case was taken under advisement.